### In re FARMLAND INDUSTRIES, INC., et al., Debtors.

### No. 02–50557–JWV.

United States Bankruptcy Court, W.D. Missouri.

Nov. 27, 2002.

Cynthia Deillard Parres, Kansas City, MO, Frank W. Lipsman, Morton, Hummard, Ruzicka & Kreamer, Olathe, KS,

Laurence M. Frazen, Mark G. Stingley, Robert M. Thompson, Bryan Cave, LLP, Kansas City, MO, Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, Kansas City, MO, for Debtor.

Jerry L. Phillips, Paula C. Acconia, Office of U.S. Trustee, Kansas City, MO, for U.S. Trustee.

Bruce E. Strauss, Thomas N. Lane, Merrick, Baker & Strauss, Kansas City, MO, Robert S. Blanc, Houston, TX, for American Plant Food Corp.

Thomas M. Franklin, Kansas City, MO, for Equalizer, Inc.

Thomas J. O'Neal, Shugart, Thomson & Kilroy, Springfield, MO, for Bartlett Grain Co., L.P.

Erlene W. Krigel, Krigel & Krigel, PC, Kansas City, MO, for Smithfield Foods, Inc.

Christopher A. Artzer, Akin, Gump, Strauss, Hauer & Feld, Houston, TX, Christopher J. Redmond, Gary D. Barnes, Husch & Eppenberger, Kansas City, MO, Henry J. Kaim, S. Margie Venus, Houston, TX, for Official Committee of Unsecured Creditors of Farmland Industries, Inc.

Daniel J. Flanigan, James E. Bird, Polsinelli, Shalton & Welte, PC, Kansas City, MO, Kathleen R. Pasulka–Brown, Mark L. Prager, Michael J. Small, William J. McKenna, Foley & Lardner, Chicago, IL, for Official Committee of Bondholders of Farmland Industries, Inc.

## MEMORANDUM ORDER

JERRY VENTERS, Bankruptcy Judge.

On June 18, 2002, the Official Committee of Unsecured Creditors ("Committee") filed a Motion (Document # 164) seeking authority to employ the firm of Houlihan Lokey Howard & Zukin Financial Advisors, Inc. ("Houlihan Lokey") as financial

advisors for the Committee, pursuant to 11 U.S.C. §§ 1103(a) and 328(a). At the hearing on the Motion, Farmland Industries, Inc., et al., ("Debtors") objected to the payment of a proposed transaction fee (the "Transaction Fee")[1] to Houlihan Lokey as an administrative expense under 11 U.S.C. § 503, arguing that the Transaction Fee should be paid out of the recoveries of the unsecured creditors whose interests are represented by the Committee (and Houlihan Lokey) rather than out of the general funds of the bankruptcy estate. The Court entered an Interim Order approving the retention and employment of Houlihan Lokey on June 21, 2002. The Interim Order provided that any Transaction Fee payable to Houlihan Lokey would be subject to the standard of review under 11 U.S.C. § 330, but specifically reserved ruling on the administrative expense status of the Transaction Fee so as to allow the Committee, the Debtors, and others with an interest in the issue time to resolve the issue. The parties were unable to resolve the problem, however, and at the conclusion of an omnibus hearing docket on October 22, 2002, counsel for the Committee asked the Court to rule the issue and enter a final order concerning Houlihan Lokey's employment by the Committee.

The Court invited briefs from the interested parties. Arguments were submitted by the Committee in support of allowing the Transaction Fee as a § 503 administrative expense payable out of the general funds of the Debtors' bankruptcy estate, and by the Debtors and the Official Committee of Bondholders ("Bondholders") in favor of requiring that the Transaction Fee, if any, be paid out of the recoveries payable to the unsecured creditors. All of the parties are agreed that the Transaction Fee is an administrative expense; the debate is over which pot of money should be used to pay it.

The Committee argues that Houlihan Lokey's Transaction Fee should be treated as a general administrative expense because the "clear and unambiguous" language of the Bankruptcy Code[2] mandates it. It notes that Houlihan Lokey was employed by the Committee pursuant to § 1103 of the Code, which authorizes a properly appointed committee to employ "one or more attorneys, accountants, or other agents, to represent or perform services for such committee."[3] The Committee then argues that any Transaction Fee payable to Houlihan Lokey represents compensation payable to a professional person under § 330(a)(1), and that payments to professionals are governed by § 503(b) of the Code, which states: "After notice and a hearing, there shall be allowed administrative expenses … including—compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). The Committee then asserts that there is nothing in § 330 or § 503(b) that requires any different treatment—that is, anything other than payment as an administrative expense— for the fees payable to a financial advisor.

In opposition to the Committee, the Debtors note that both the Unsecured

---

1. As described by the Bondholders in their brief, the Transaction Fee is 1 percent of the amount distributed to the Committee's constituency. One-half of Houlihan Lokey's monthly fees for six months ($450,000.00) are to be credited against the Transaction Fee. The Transaction Fee is to be, in any case, a minimum of $1,000,000.00 and a maximum of $3,000,000.00.

2. Title 11, United States Code.

3. There is no debate that employment of a financial advisor is authorized under § 1103, or that Houlihan Lokey was not properly employed pursuant to that section.

Creditors Committee and the Bondholders Committee have hired financial advisors and have made different agreements concerning the financial advisors' fees. In contrast to the arrangement between Houlihan Lokey and the Committee, the Bondholders and their financial advisor, Ernst & Young Corporate Finance ("Ernst & Young"), have agreed that any "completion fee" payable to Ernst & Young will be paid out of the distributions made to the Bondholders. The Debtors concede that the fees of both of the financial advisors will be paid as costs of administration under § 503, but state that "it would only seem fair that each of these constituencies should bear the costs and/or efficiencies of the bargains they have negotiated. To do otherwise, would cause the Bondholders to disproportionately bear the cost of the HL [Houlihan Lokey] Transaction Fee." Both Houlihan Lokey and Ernst & Young, the Debtors point out, have duties that run to their employing Committees and are not authorized to act on behalf of the Debtors, and therefore any transaction or completion fees should be paid out of the distributions to the Committees' constituencies, whether bondholders or unsecured creditors.

The Bondholders, in their objections to the Committee's proposal, assert that allowing Houlihan Lokey's Transaction Fee as an administrative expense payable out of the general fund of estate assets would result in the Bondholders paying a disproportionate share of the professionals' fees. They assert that this is particularly true in this case because the Bondholders have obtained "substantially more favorable terms of engagement" with Ernst & Young. The Bondholders argue that the Transaction Fee should be paid out of the payments to unsecured creditors because the fee is calculated on the basis of returns to that creditor constituency, not to the bankruptcy estate or to unsecured creditors as a whole, and because (as provided in Houlihan Lokey's engagement letter) Houlihan Lokey's duties run solely to the Committee, not to the Debtors or the bankruptcy estate.

■ Upon consideration of these arguments and the unique circumstances of this case, the Court believes that the fair and equitable thing is for any Transaction Fee earned by Houlihan Lokey to be paid out of any distribution that shall be made to the unsecured creditors.[4]

First and perhaps most important, the Court views the Transaction Fee that has been negotiated by Houlihan Lokey and the Committee as essentially a contingent fee[5] that will be based on the amount of any recovery Houlihan Lokey helps obtain for the unsecured creditors. It is customary that parties who contract for the payment—or award, if you will—of a fee based on the success of the representation should pay that "success fee" out of the recoveries made. This is especially true here where the basic fees of Houlihan Lokey are being paid as an administrative expense out of the general fund of the bankruptcy estate. Houlihan Lokey is presently receiving a monthly fee of $150,000.00 that is being paid by the Debtor out of estate funds; thus all creditors are, in effect, bearing that expense. (Ernst & Young's monthly fee ($125,-000.00) is similarly being paid out of estate funds.) The Transaction Fee is an addi-

---

4. This case is unique because there are two creditors' committees—not the usual one—and the committees have negotiated different compensation packages with their financial advisors.

5. Sometimes referred to as a "success fee" in bankruptcy cases.

tional, contingent fee of 1 percent of the amount distributed to the Committee's constituency, and that additional fee—if one is earned—should rightly be paid by the creditors who directly benefit from the recoveries made.

Secondly, the Transaction Fee should be paid out of the distributions made to the general unsecured creditors because Houlihan Lokey is working specifically for the benefit of those creditors, and not for the benefit of all creditors or the overall benefit of the bankruptcy estate. As noted by the Debtors, Houlihan Lokey's loyalties "run solely to the Committee," per the express language of Houlihan Lokey's engagement letter. Granted, the efforts of Houlihan Lokey may—and hopefully will—produce benefits for the general creditor body, but in the final analysis Houlihan Lokey owes its allegiance to the creditor constituency it represents and its fees are based on what it helps to recover for those constituents. It seems patently unfair to require that the "success fees" for the advisors to a particular constituency be paid out of the general funds of the bankruptcy estate, thereby requiring all creditors to share in the payment of those fees. Those constituents, not the general creditor body, should pay for those results.

Third, Houlihan Lokey's Transaction Fee was bargained for by the Committee, acting on behalf of the general unsecured creditors. It was not bargained for by the Debtor, the bondholders, or any other creditor group. The Committee should not be permitted to impose on all creditors payment of the success fees that the Committee has bargained for on behalf of its own constituency. If it receives the benefit of that bargain, it should pay for that benefit.

Fourth, requiring that Houlihan Lokey's Transaction Fee be paid out of the general funds of the estate would result in some creditors paying a disproportionate share of the fee. In this case, the bondholders have estimated claims of approximately $580 million, whereas the claims of the general unsecured creditors presently total approximately $200 million. Thus, the bondholders' claims are almost three times the general unsecured creditors' claims, and paying the Transaction Fee out of the general funds of the estate would mean that the bondholders would be shouldering approximately 75 per cent of the cost of the fee, whereas the unsecured creditors would be bearing only 25 percent. That is simply not fair.

The Committee has expressed concern that the Court would reach the result it has on the basis that Houlihan Lokey's fee should be handled in the same manner as the Completion Fee that may be earned by Ernst & Young on behalf of the Bondholders. The Ernst & Young Completion Fee, as previously noted, is to be paid from the distributions made to the bondholders. The Court will assure the Committee that the decision announced herein was not arrived at for that reason. Just because the Bondholders made a particular arrangement with their financial advisor does not mean that that same agreement should be imposed on the financial advisors hired by other constituencies. In this case, however, the Court does believe that the agreement for additional fees entered into by the Bondholders and Ernst & Young is fairer and more equitable to all creditors than is the agreement entered into by the Committee and Houlihan Lokey. The Court's decision turns, very simply, on what is most fair to all creditors.

From what has been said, it should be clear that the Court does not agree with the Committee that §§ 330, 1103, and 503 of the Bankruptcy Code mandate that the Transaction Fee be paid out of the general funds of the bankruptcy

estate. Those sections do make it clear that the fee should be paid as an administrative expense, but about that there is no argument. However, those sections do not provide *who* is to pay a particular administrative expense, and it appears that decision falls to the Court, in its discretion. Finally, the Court disagrees with the Committee that requiring the general unsecured creditors to pay the contingency fee would amount to a surcharge on the unsecured creditors in violation of 11 U.S.C. § 506(c). It can scarcely be called a surcharge to require that the creditors pay the contingency fees that the creditors themselves bargained for.

Finally, the Court will decline the Bondholders' invitation to defer this decision until Houlihan Lokey submits its application for a Transaction Fee (assuming one is earned) for approval pursuant to § 330. The issue is timely and should be resolved now, so as to put to rest the uncertainty in the minds of both Houlihan Lokey and Ernst & Young how they are to be paid and to resolve any lingering disagreements between the two committees on this issue. Likewise, the Court will decline the Bondholders' request that the Court use this occasion to correct an alleged error in Houlihan Lokey's engagement letter with respect to whether certain bonds should be excluded from the unsecured claims on which Houlihan Lokey's fee is to be based. That problem can be addressed if and when Houlihan Lokey files a request for approval of any Transaction Fee.

For all of these reasons, the Court finds that any Transaction Fee to be paid to Houlihan Lokey as the financial advisor to the Committee should be paid out of the distribution that is made to the general unsecured creditor constituency, and not out of the general funds of the bankruptcy estate. However, any such fee shall be paid as an administrative expense pursuant to 11 U.S.C. § 503.

Therefore, it is

**ORDERED** that any Transaction Fee to be paid to Houlihan Lokey as the financial advisor to the Committee, after approval by the Court pursuant to 11 U.S.C. § 330, shall be paid as an administrative expense pursuant to 11 U.S.C. § 503 but shall be payable out of the distribution that is made to the general unsecured creditor constituency, and not out of the general funds of the bankruptcy estate. It is

**FURTHER ORDERED** that counsel for the Official Committee of Unsecured Creditors shall, within 10 days of entry of this Order, submit to the Court by electronic mail a proposed Final Order with respect to the retention of Houlihan Lokey Howard & Zukin Financial Advisors, Inc. ("Houlihan Lokey") as financial advisors for the Committee, containing provisions that are consistent with this Order.